IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TAMMY GRAY, ) | |
| ) | Case No. CV-06-069-S-BLW |
| Plaintiff, ) | |
| ) | **MEMORANDUM DECISION** |
| v. ) | **AND ORDER** |
| ) | |
| BRUNEAU-GRAND VIEW ) | |
| SCHOOL DIST. NO. 365, BOARD ) | |
| OF TRUSTEES OF BRUNEAU- ) | |
| GRAND VIEW SCHOOL DIST., ) | |
| and KATHLEEN DELLE, DALLAS ) | |
| TAYLOR, in their official capacities, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

The Court has before it Defendants' Motion for Summary Judgment (Docket No. 18). The Court held oral argument on the motion on January 26, 2007 and now issues the following decision.

## ANALYSIS

### I.   First Amendment Claim

Plaintiff, Tammy Gray, claims that Defendants placed her on probation and subjected her to excessive observations and evaluations in retaliation for her association with her husband after her husband objected to the school district's policy to permit children in their care to throw snowballs at each other. Although

**Memorandum Decision and Order - 1**

Gray makes a general allegation in her Complaint that she was retaliated against based on free speech and association violations, nothing in the facts before the Court support an assertion that she was retaliated against for her own speech. Instead, the facts before the Court suggest that Gray's claim is for retaliation based on her association with her husband. The Court will therefore treat Gray's claim as a pure association claim.[1]

Because Gray's claim is a free association claim, the familiar *Connick* balancing test, which typically applies to free speech claims and may also apply to hybrid speech/association claims, does not apply here. *See Pickering v. Board of Education*, 391 U.S. 563 (1968). As suggested by the Seventh Circuit in *Balton v. City of Milwaukee*, 133 F.3d 1036, 1040 (7th Cir. 1998), "because *Connick's* public concern test grew out of a speech case, it may not appropriately recognize the important distinction between speech and association, [which] may lead . . . to

---

[1] Gray's claim is not a hybrid free speech/free association claim either. Unlike the professor plaintiff in *Hudson v. Craven*, 403 F.3d 691, 695 (9th Cir. 2005), whose claim revolved around her right to associate with students at an anti-WTO rally where the very purpose of the rally was to speak out against the WTO, Gray's association with her husband is not inextricably connected to her husband's speech. Thus, the Court finds applicable to Gray's claim the Second Circuit's statement in *Adler v. Pataki*, 185 F.3d 35, 44 (2nd Cir. 1999) that "we think a spouse's claim that adverse action was taken solely against that spouse in retaliation for conduct of the other spouse should be analyzed as a claimed violation of the First Amendment right of intimate association." *Adler v. Pataki*, 185 F.3d 35, 44 (2nd Cir. 1999).

**Memorandum Decision and Order - 2**

insufficient protection of the associational rights of public employees." *Balton v. City of Milwaukee*, 133 F.3d 1036, 1040 (7th Cir. 1998).  This is particularly true as to purely private matters such as the choice of whom to marry.  *Id.*  Clearly, Gray's association with her husband is a purely private matter.

Accordingly, the Court will apply the prototypical test for determining whether a First Amendment retaliation violation has occurred.[2]  Gray must therefore show that (1) she engaged in protected association; (2) the defendants took an adverse employment action against her; and (3) her association was a substantial or motivating factor for the adverse employment action.  *See Hudson v. Craven*, 403 F.3d 691, 695 (9th Cir. 2005).

**A.     Was Plaintiff engaged in a protected association?**

---

[2]  Even if the Court were to apply some form of the *Connick* balancing test, it would conclude that the Defendant's interests here cannot outweigh the Plaintiff's right of intimate association with her husband.  Paraphrasing from language adopted by the Second Circuit in *Adler v. Pataki*, 185 F.3d 35, 44 (2nd Cir. 1999),the Court concludes that:

> [I] need not decide in this case whether in some circumstances the conduct, or even the identity, of a [husband] might raise such serious concerns about [his wife's] suitability for public employment as to justify [some adverse employment action against the wife].
> * * *
> For purposes of this case, [I] need only rule that the activity of [Grey's husband in criticizing school officials and their policies] could not reasonably be found to justify [any adverse employment action].

**Memorandum Decision and Order - 3**

With respect to whether Gray engaged in protected association, this Court agrees with the Second Circuit's statement in *Adler* that "we think a spouse's claim that adverse action was taken solely against that spouse in retaliation for conduct of the other spouse should be analyzed as a claimed violation of the First Amendment right of intimate association." *Adler*, 185 F.3d at 44.  As was the case in *Adler*, Defendants in this case have neither purported to regulate Gray's right to decide whom to marry nor have they endeavored to end a marriage relationship already begun – claims better analyzed under the substantive due process component of the Fourteenth Amendment. *Id.*  Thus, Gray's association with her husband is an intimate association entitled to protection under the First Amendment.

**B.     Did Plaintiff suffer from an adverse employment action?**

As to the second element, whether Defendants took an adverse employment action against Gray, Gray asserts that Defendants placed her on probation and subjected her to excessive observations and evaluations.  The Ninth Circuit has stated that in order to meet this element in the context of a First Amendment retaliation claim, a plaintiff must "demonstrate only that he suffered a loss of any 'governmental benefit or privilege' in retaliation for protected speech activity, not that he had a legal right to the benefit denied him." *Ulrich v. City and County of San Francisco*, 308 F.3d 968, 977 (9th Cir. 2002) (quoting *Hyland v. Wonder*, 972

**Memorandum Decision and Order - 4**

F.2d 1129, 1134-35 (9th Cir.1992). However, it is also clear that neither a termination nor "the substantial equivalent of a dismissal" is necessary to establish the requisite adverse employment action. *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 110 S.Ct. 2729 (1990). Because "[t]he First Amendment prevents the government, except in the most compelling circumstances, from wielding its power to interfere with its employees' freedom to believe and associate, or to not believe and not associate," an adverse employment action necessarily includes "deprivations less harsh than dismissal that nevertheless press state employees and applicants to conform their beliefs and associations to some state-selected orthodoxy." *Id.* at 75 & 76. Following this lead, the Ninth Circuit has defined adverse employment actions broadly, so as to include any adverse treatment that is reasonably likely to deter the employee or others from engaging in a protected activity. *Coszalter v. City of Salem,* 320 F.3d 968, 974 (9th Cir. 2003); *Little v. Windermere Relocation, Inc.,* 265 F.3d 903, 914 (9th Cir. 2001); *Ray v. Henderson,* 217 F.3d 1234, 1242-43 (9th Cir. 2000).

Although it is a close question, the Court concludes that the Plaintiff has raised a disputed issue of material fact as to whether she was subjected to adverse employment action. A reasonably jury may conclude that an adverse employment action has occurred if they accept the Plaintiff's view that she was placed on

**Memorandum Decision and Order - 5**

probation, advised that termination may result from a failure to successfully complete the probationary term, subjected to a work improvement plan with frequent evaluations of her performance, and required to participate in weekly meetings in which she was relentlessly criticized. Accordingly, the Court concludes that Plaintiff has satisfied the second element of a First Amendment retaliation claim.

### C. Was Plaintiff's intimate association with her husband a substantial or motivating factor for the adverse employment action?

The final element Gray must establish is that her association with her husband was a substantial or motivating factor for the adverse employment action. The Ninth Circuit has listed three ways in which a plaintiff can show that retaliation was a substantial or motivating factor. First, a plaintiff may introduce evidence regarding proximity in time between the protected action and the retaliatory employment decision, from which a jury could infer that the plaintiff was terminated in retaliation for his speech. *Coszalter,* 320 F.3d at 977. Second, a plaintiff may introduce evidence that his employer expressed opposition to his speech. *Id.* Finally, the plaintiff may introduce evidence that his employer's proffered explanations for the adverse employment action were false and pre-textual. *Id.*

**Memorandum Decision and Order - 6**

Gray has provided evidence that she was placed on probation within a matter of days after the date her husband complained about the school's snowball throwing policy. Defendants counter that even before Gray's husband complained about the snowball throwing policy, Defendants had placed Gray's name on a list for the purpose of discussing whether or not to place her on probation. However, deciding to discuss whether or not to place Gray on probation and deciding to actually place her on probation are two very different actions. It is undisputed that the decision to place Gray on probation occurred after Gray's husband complained about the snowball throwing policy. The relatively short amount of time between the two events, a matter of days, is well within the time range that can support an inference of retaliation. *Coszalter* 320 F.3d at 974 (9th Cir. 2003) ("Depending on the circumstances, three to eight months is easily within a time range that can support an inference of retaliation.") This evidence is sufficient to create a genuine issue of material fact as to whether Gray's association with her husband was a substantial or motivating factor for the adverse employment action. Accordingly, the Court will deny Defendants' motion for summary judgment on Gray's First Amendment claim.

**Memorandum Decision and Order - 7**

## II.     Negligent Infliction of Emotional Distress Claim

"[I]n order to allege and prove a claim for negligent infliction of emotional distress there must be both an allegation and *proof* that a party claiming negligent infliction of emotional distress has suffered a physical injury, i.e., a physical manifestation of an injury *caused* by the negligently inflicted emotional distress." *Cook v. Skyline Corp.*, 13 P.3d 857, 865-66 (Idaho 2000) (emphasis in original, internal quotations omitted).  Thus, the question is whether Gray has asserted facts supporting her claim that Defendants' actions caused her to suffer an injury which was physically manifested in some way.

Gray's Complaint makes the general assertion that she suffered emotional distress with physical manifestations, but it does not assert what type of physical manifestations.  Gray also provided the Court with the Affidavit of her treating physician, Dr. Daryl MacCarter.  Dr. MacCarter states that Gray was afflicted with symptom-free Lupus from 2000-2004.  He further states that Gray's condition worsened in the Spring of 2004 when she developed symptoms of, and was diagnosed with, Sjogren's Syndrome.  Finally, Dr. MacCarter states that Gray's "condition in 2004 may have been caused or worsened by increased levels of stress experienced by Ms. Gray during that time." (Declaration of Dr. Daryl MacCarter, ¶ 11).

**Memorandum Decision and Order - 8**

The evidence before the Court is insufficient to allege that there is proof that Gray suffered a physical manifestation of an injury caused by the negligently inflicted emotional distress.  Dr. MacCarter's statement that Ms. Gray's medical condition **may** have been caused or worsened by the actions of the defendant does not satisfy the requirement that there be proof of a **causal connection** between the negligently inflicted emotional distress and the physical manifestation complained of.  Simply put, Dr. MacCarter's allegations fail to state that Defendants caused Gray's stress or that Gray's stress caused her medical condition.  Dr. MacCarter's statement that Gray's condition may have been caused or worsened by increased levels of stress is not enough.  Accordingly, the Court will grant Defendants' Motion for Summary Judgment as to Gray's Negligent Infliction of Emotional Distress claim.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (Docket No. 18) shall be, and the same is hereby, GRANTED in part and DENIED in part.  The motion is denied as to Gray's First Amendment claim.  The motion is granted as to Gray's Negligent Infliction of Emotional Distress claim.

**Memorandum Decision and Order - 9**

IT IS FURTHER ORDERED that the Clerk of the Court shall set this case for a status conference for the purpose of setting the case for trial.

DATED: **March 27, 2007**

B. LYNN WINMILL
Chief Judge
United States District Court

**Memorandum Decision and Order - 10**